please be seated. Mr. Newman. Go ahead. May it please the court, counsel? Before you get started, let me just answer a couple questions. And that is, is there not an Illinois Supreme Court case that says that these commitment cases are civil and they don't constitute punishment? Yes, there is, Your Honor. And wouldn't we have to basically overrule that case to give you the relief you're granting, you're requesting? No, you would not. Okay, because you understand that's above our pay grade, and the, what that kind of relief you're going to have to get to the Supreme Court. Well, Your Honor, if I may answer that question. I believe that I've addressed this to some extent in my brief. This panel, in fact, Justice Carter, Justice Schmidt, and Justice Whitten have all been involved in recent cases in Tedder and Kokobar that found that the SORA statutes were unconstitutional. And what happened to those cases in the Supreme Court? Well, Your Honor, they were vacated in the Supreme Court, but on grounds that SORA orders were not appealable. So they weren't on grounds that SORA did not constitute punishment, but on grounds that those orders were not properly before the Court for consideration. And I would like to... Did they find that they weren't unconstitutional as we were suggesting? Didn't they say that? Well, the order vacating the Tedder decision and the Kokobar decision, they just addressed, they directed this Court to reconsider in light of Bingham. And the Bingham Court held that the SORA orders were not final appealable orders or part of the sentencing judgment that could be appealed. So as it relates to Tedder and Kokobar, those are not... The defendants in those cases could not appeal the Constitution. Well, this Court made a distinction as to the SORA statute then when that case was decided, when that Supreme Court case was decided and the SORA statute now. But at any rate, I understand that the this Court also has a continuing responsibility to evaluate the constitutionality and statutes as the law develops. And frankly, since the Supreme Court has weighed in on whether SVP commitment constitutes punishment, a lot has changed with respect to the way that we think about young people and sentencing. Well, first of all, this is not a sentence. And secondly, Kokobar and Tedder dealt with restrictions on the defendant upon release, not commitment, civil commitment cases, right? Well, yes, those SORA is... And so you're talking about the commitment itself, the fact that he's confined. That's correct. And so, and the Supreme Court has said that's not a constitutional punishment because it's not punishment. The confinement, we're not talking... Tedder, Kokobar, et al. were about these restrictions upon release from confinement. Well, Your Honor, as I stated in my brief, I would think that anyone who was confined in the DHS facility for sex offenders treatment would love to have just the SORA restrictions on them. And this Court has found in those decisions, and granted they were vacated, but on different grounds, this Court has found that SORA constitutes punishment. So I don't know how this Court can arrive at any other conclusion that being locked up in a secure DHS facility after one has completed his sentence does not constitute punishment. It is far more restrictive. If you look at the Mendoza-Martinez factors that the Court relied on in Tedder and Kokobar, and you apply them to SVP cases, it is much more punitive than And it is very similar in terms of when the... In some respects, it's even more egregious because at least a SORA registration requirement starts at the beginning of a defendant's sentence, whereas civil commitment necessarily by statute starts after one has finished his sentence. So you're placing greater restrictions on a defendant who has finished his sentence versus less restrictions on a defendant who is just beginning his sentence. And the Court has found that in those particular two cases, that that was unconstitutional. And if you look at, just to briefly revisit the Mendoza-Martinez factors, there has to be affirmative restraint, pain or unpleasant consequences, incapacitation of the sex offender, and retribution. And there has to be broad application to include individuals who commit the qualifying offenses. I think that all of those boxes are checked here with respect to civil commitment. And that civil commitment does fall within the continuum of punishment that the Court has described before, from, I think, that qualifying conviction. And I want to address that for a moment because I think that that's important. I understand that the road that I'm traveling right now is an uphill road, but I think that the law is heading in this direction. I think that the law is going. There's a constantly evolving recognition of the severity of civil collateral consequences to criminal convictions. That is becoming more and more apparent, not just in the state of Illinois, but nationwide. And we're starting to recognize that these collateral consequences that we always used to say, oh, that's collateral, it's not a direct thing, that these collateral consequences can be more serious than the direct consequences of conviction. And as such, our courts are starting to treat these collateral consequences as just as important as the direct consequences that flow from a conviction. So it's not an abstract thought to think of DHS treatment as confinement or something similar to imprisonment. They're very, very similar, especially if somebody is in DHS confinement and is not participating in treatment. And I wanted to take a moment to address an issue that the state has brought up where they're saying, well, he wasn't committed just based on his juvenile adjudication alone. There are other facts that led to his commitment. But those other facts are largely, they largely revolve around that offense. And the offense conduct, if you will, or admissions that he'd made to other victims actually occurred prior to the qualifying offense. And one thing that I want to point out that I think is especially important to note is that Mr. Kugler would not have been committed but for this juvenile adjudication. So even if he had manifested these sexually aberrant behaviors, even if he had sexually molested a number of different children but was never actually arrested and convicted or adjudicated, he would have not been eligible for commitment under the Sexually Violent Persons Act. Nobody would be under the Sexually Dangerous Persons Act. He may. But that's quite a different animal. There is. But, thank you. But today we're just talking about the SVP Act. And I think that it is very important to focus in on the fact that that juvenile adjudication is needed. Now when the legislator passed the SVP Act and made a juvenile adjudication an eligible qualifying offense as opposed to other adult convictions, we didn't have Miller. We didn't have Roper. We didn't have Graham. We didn't have any of that. And now we do. And I think that we should start looking at those juvenile adjudications differently. And we should start looking at a possibility of lifetime commitment for a single juvenile adjudication. I think that that's a really unique fact. It's because of his current condition as evaluated by an examiner, right? Well, that's certainly part of, you know, the evaluations determine that he had a mental disorder. But again, without the juvenile adjudication, he wouldn't have been eligible for commitment. And this is a unique situation because most of the time when individuals are committed as SVPs, they have multiple convictions. And not only multiple offenses, but multiple adult convictions. This is a rare case in which the defendant was committed based on a single juvenile adjudication. So a lot of times, SVP committees will have a juvenile adjudication as part of their criminal history, but it won't be the predicate offense. And I think that that's what makes this case distinguishable from the Ruffker case that the state cited in the supplement here is that that defendant committed his predicate offense when he was 20. So he had some juvenile history as well. In fact, a juvenile adjudication, but the doctor in that case identified the that was committed when he was at age 20. So with that, I would ask that the court reverse the trial court's order denying Mr. Kluger's motion to dismiss. Thank you. Is it Barbat? Is it Barbat? May it please the court, counsel, assistant attorney general Rachel Barbat on behalf of the people. There are two reasons here that the court should affirm the trial court's judgment. Respondent's motion is both untimely and Miller v. Alabama does not apply in this context. I'll circle back to the timeliness argument, but I'll start with the Miller argument. So as this court recognized in its questioning, there are multiple cases here that are directly on point. In Samuelson, the Illinois Supreme Court held that the SVP Act was not punitive and therefore the Eighth Amendment does not apply and they relied on Hendricks, Kansas v. Hendricks, which is a U.S. Supreme Court case from 1997 that looked at a very similar Kansas SVP Act and actually addressed many of the arguments that Respondent's counsel has made today. They looked at the fact that SVPs are detained for long periods of care and required either a conviction or a not guilty by resounding verdict before committing someone and they rejected those arguments and found that all of those requirements did not make the statute punitive. And both of those cases are still good law. We know this in part because the second district just issued its decision in Rutherford reaffirming that Samuelson cites the Samuelson and says that in that case, that committee's argument failed because Samuelson controls and the Eighth Amendment does not apply. There's no reason to go beyond Hendricks and do a full Mendoza-Martinez analysis here. Hendricks already did that exact analysis and the U.S. Supreme Court concluded that SVP laws such as the one here are not punitive. Part of what Respondent's counsel was really arguing today was about recognizing that we're moving toward something and it's not necessarily the court's role to recognize and implement changes to the law. The legislature can easily look at this SVP statute and if it wants to amend it, it can. It has that available to it. Miller was issued in 2012. It has made no changes to the SVP statute since that time. And this court is bound by Samuelson and Hendricks, which are directly on point. I'll briefly address the timeliness argument just because I think it is a threshold argument and a threshold issue here. This motion to vacate or dismiss the order of commitment was raised around the time of re-examination, but as Respondent points out in his brief, was not related to the re-examination proceedings. Respondent did not try to fit this within the narrow criteria for discharge or for conditional release. So what is the motion? It's clear that it's too late to be a motion to dismiss on the pleadings. The pleadings were filed 10 years before this motion was brought, 9 years after this court affirmed the judgment of commitment. And we know that he can file a 214-01 collateral attack on the judgment. But looking at that, 214-01 petitions have time requirements usually 2 years from the date the judgment was entered. Again, this was brought almost 10 years after the judgment was entered. Very untimely. And Thompson, which is the Illinois Supreme Court case, reinforces that even as applied constitutional challenges are still subject to the procedural rules of 214-01. In sum, if your honors have no questions, this case is controlled by Samuelson and Hendricks and the motion itself is untimely. I should affirm on that basis. Mr. Amos and Revolta. I wanted to cut out some of the procedural underbrush here with respect to the timeliness of the motion. Even if I hadn't filed a motion in the trial court raising this issue, the appellate court and the Supreme Court has stated that as applied challenges can be brought for the first time on appeal as long as the record is sufficient to. And as long as the court otherwise has jurisdiction. That's correct. And so it's got to have independent jurisdiction to deal with an untimely motion. Otherwise, it has to be brought up if the court's got jurisdiction. And the court would have jurisdiction here. It was part of the It was filed in connection with the state's motion for periodic reexamination. And the case law is clear that such a motion can be entertained by the court in its discretion and only abuses its discretion when the state or the other side rather, in this case, it is the state, shows that it has been prejudiced and it made no such allegation here. So I think that the substantive issue is properly before the court and I think that it can be reached. I wanted to respond to a comment that the state had made in its argument and that's essentially that the state's arguing that we're not there yet, that the court has already decided this issue and that this lower court is bound by that. But I'd like to once again remind this court that in the two instances in which I referenced both the Guzman decision in 2014, which is referenced in my brief, and the Kochevar decision, that that was well-settled law too. And this court used its continuing obligation to evaluate the constitutionality of statutes to, frankly, go out on a limb and make a decision that had not been made before. And it wasn't an issue of first impression as this is, it was an issue of law that had been settled. And when the Supreme Court vacated those decisions, it didn't make any comment on whether the court's reasoning was improper or whether it wasn't following precedent. It remained for an entirely different reason. And the court knows, this particular panel knows, having been involved in both of those decisions, that there was clearly a lot of thought that went into those decisions. And it was not easy to step outside of basically established precedent to make a determination that, in my opinion, was a correct application of the law, especially with respect to how the law has been trending recently. And that is what we're asking the court to do in this case. It's a relatively straightforward application of that reasoning from those decisions to this very similar situation. So essentially what we're asking is to take the reasoning of Tedder and Kochevar, apply it to this case, which is worse than those, and reach the same result. So for those reasons, we would ask the court to reverse. Thank you. Thank you both for your argument here this morning, this afternoon. And this matter will be taken under advisement, and this position will be issued, and it won't be in recess until 1 o'clock.